UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HEATHER M. SCHMIDT, M.D.,

                      **Plaintiff,**

       -VS-

CLIFTON-FINE HOSPITAL, ROBERT SEAMON
AND WALTER TODD,

                     **Defendants.**

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

**Civil Action No.** 8:18-cv-355 (DNH/DJS)

---

Plaintiff HEATHER M. SCHMIDT, M.D., as and for her complaint against Defendants,

CLIFTON-FINE HOSPITAL, ROBERT SEAMON, AND WALTER TODD, shows this Court

the following:

## NATURE OF THE ACTION

1.      Heather Schmidt brings this lawsuit against her former employers, Clifton-Fine

Hospital, Robert Seamon, and Walter Todd, for violations of the Americans with Disabilities

Act of 1990, 42 U.S.C. § 12112 – 12117, and Article 15 of the Executive Law of the State of

New York, the New York Human Rights Act.  Schmidt is filing this discrimination complaint

because she endured disability discrimination and retaliation at work.  Dr. Schmidt worked as a

family practice physician for Defendants from June 29, 2015, until she was terminated on

October 9, 2015.

2.      Plaintiff seeks injunctive and declaratory relief, as well as monetary

damages, for the harm caused to her by the willful actions of Defendants that violated the

Americans with Disabilities Act and the New York Human Rights Act.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 29 U.S.C. § 1331, *et seq.*,

because the suit arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 –

12117.  The administrative prerequisites to suit are satisfied because Plaintiff filed administrative

charges with the New York Division of Human Rights and the Equal Employment Opportunity

Commission.  Plaintiff's complaint of discrimination with the New York Division of Human

Rights was dismissed for administrative convenience on November 6, 2017.  A copy of the

Order of Administrative Dismissal is attached hereto.  Plaintiff received a Notice of Rights from

the Equal Employment Opportunity Commission on December 21, 2017.  A copy of the Notice

of Rights is attached hereto.  This action is timely filed.

4.      The Court has jurisdiction over Plaintiff's remaining claims pursuant to 29 U.S.C.

§ 1367, because they are state law claims that form part of the same case or controversy as Plaintiff's

federal claims.

5.      Venue properly lies within this judicial district pursuant to 29 U.S.C. § 1391(b) as

the Defendant committed its unlawful practices in this district, and Defendants are located in this district.

## PARTIES

**A.     Plaintiff**

6.      During the relevant period of this lawsuit, Plaintiff was employed by Defendants

as a family practice physician.

**B.     Defendants**

7.      Clifton-Fine Hospital is a hospital in Star Lake, New York.  Clifton-Fine Hospital

was Plaintiff's employer during the relevant period pursuant to the Americans with Disabilities

Act and the New York Human Rights Act.

8.      Robert Seamon is the Chief Executive Officer of Clifton-Fine Hospital.  He was Plaintiff's employer during the relevant period pursuant to the Americans with Disabilities Act and the New York Human Rights Act.

9.      Walter Todd was the Chairman of the Board of Clifton-Fine Hospital.  He was Plaintiff's employer during the relevant period pursuant to the Americans with Disabilities Act and the New York Human Rights Act.

## FACTUAL BACKGROUND

10.      Heather Schmidt is a board eligible family practice physician, and she finished her residency training in June 2015.

11.      In October of 2007, Dr. Schmidt began to have cluster headaches. Cluster headache is a neurological condition in which an individual gets extremely painful headaches that often occur in a predictable cyclical pattern or cluster. Patients can also have significant autonomic impairment, in addition to the pain episodes. Cluster headaches are often clinically categorized as episodic or continuous, with some possibility of a patient transitioning between the two. In the case of Episodic Cluster Headaches (the variant Dr. Schmidt has), symptomatic periods may last several weeks or more, and are usually followed by remission periods when the headache attacks stop completely. During remission, no headaches occur for months and sometimes even years. While there have been some outliers over the years, Dr. Schmidt's cluster headaches generally occur in the spring and fall, and last on average for about six to eight weeks at a time.

12.      Because of the severity of Dr. Schmidt's cluster headaches, she sometimes requires accommodations to successfully perform her job. This was also true in medical school and residency.

13.     When Dr. Schmidt applies for physician jobs, she has the recruiters disclose that she is disabled.  She has the recruiters educate the prospective employers about cluster headaches and the accommodations that she will require. Dr. Schmidt put together an information sheet for the recruiters to hand out to prospective employers with information about cluster headaches. She also includes information specific to her presentation of cluster headache, so that prospective employers know what to expect.

14.     Dr. Schmidt interviewed for a family practice physician job at Clifton-Fine Hospital in November 2014. Clifton-Fine Hospital is located in Star Lake, New York, which is a small town in the Adirondacks. Because of its draw for vacationers, the population in Star Lake swells during the summer and the winter, and drops down in spring and fall. Clifton-Fine Hospital is a very small critical access hospital, with attached clinic and integrated extended care. The twenty hospital beds are divided between acute and extended care, with the acute care having a low census.

15.     Interviews for physician jobs often last a couple of days, and include formal meetings, meals, and tours. During her interview at Clifton-Fine Hospital, Dr. Schmidt was in a cluster headache period. Special accommodation was made for her to travel with an oxygen tank. Oxygen is a treatment for cluster headaches. At one point during the interview, the discussions had to be halted because Dr. Schmidt had an acute cluster headache, and she needed to receive oxygen from her oxygen tank and mask. Afterwards, during dinner Dr. Schmidt had some minor residual neurologic signs, including eye tearing. During the interview period, she met with the two other clinic practitioners, Dr. Carthy and nurse practitioner Deborah Body, the charge nurse from the hospital, John, the emergency room physician assistant, Sam, and a couple hospital board members.

16.      During her job interview at Clifton-Fine Hospital, Dr. Schmidt extensively and openly discussed her medical condition and disclosed her disability to the representatives of Clifton-Fine Hospital.  She spoke to Dr. Carthy and Deb Body, who would be her clinical colleagues and ensured they were aware of her condition. Dr. Schmidt told hospital CEO Robert Seamon that she would need to take time off in the spring and fall when her cluster headaches occur. Robert Seamon told Dr. Schmidt that it would not be a big deal for the hospital if she had to take time off in the spring and fall. Seamon said, "It's a small hospital; we can be more flexible than a big hospital; don't worry." He indicated that, because of the nature of the area's demographics, the fall and spring were "slow times," and could be accommodated by the existing professionals. He suggested that, in the event of the clinic being unusually busy, the emergency room physician assistant was more than willing to step in and help cover, as well. Seamon said, "Don't worry, we're all interested in your success."

17.      During Dr. Schmidt's job interview at Clifton-Fine Hospital, there was discussion about which doctor could provide her with nerve block injections for her pain. Nerve block injections are a treatment for cluster headaches. Dr. Schmidt's neurologist even offered to train whomever would administer these injections in a new, less invasive technique called a sphenocath block. Dr. Carthy, the senior physician and Chief Medical Officer, told Dr. Schmidt that he looked up the nerve blocks she requires, and they would be "no big deal" for him to do in the clinic office. He also indicated that he did not think the cluster headache concern would be a problem.

18.      Dr. Schmidt had an exacerbation of her headache during the interview at Clifton-Fine Hospital, and she asked for and was given privacy while her headache was acute.

19.      The physician recruiter Dr. Schmidt used, Shandon Collins, with Fidelis Partners, LLC, reported to her about Clifton-Fine Hospital, "They're not intimidated by cluster headaches."

She, like all of Dr. Schmidt's recruiters, had been given the information regarding Dr. Schmidt's condition and confirmed that she had presented it to the Clifton-Fine representatives before Dr. Schmidt interviewed.

20.     Before she accepted the job at Clifton-Fine Hospital, Dr. Schmidt called one of the practitioners she would be working with, Nurse Practitioner Deborah Body, to make sure that there were no problems with Dr. Schmidt taking the position given her disability. Deborah Body assured me that there would be no problems.

21.     Dr. Schmidt rejected the first contract Clifton-Fine offered her, explaining to Robert Seamon that there were requirements in the contract that she would be unable to perform because of her disability. Dr. Schmidt was sent a second contract, which addressed the issues she had due to her disability. The second contract included a way for Dr. Schmidt to bank hours worked above the standard expected hours, in order to partially compensate for the time she was predictably going to miss due to cluster headaches.

22.     Before she started her job at Clifton-Fine Hospital, Dr. Schmidt provided a preemployment physical report to the hospital from her primary care doctor. Dr. Schmidt asked Robert Seamon several times what to do regarding her cluster headaches and this paperwork, and he told Dr. Schmidt, "Don't worry about it. We already know all about it." He even said that if her primary care physician was not comfortable certifying her for the employment position, that it could be done once she arrived by Dr. Carthy. Robert Seamon repeatedly assured Dr. Schmidt that he understood the concerns presented by her disability, but that Clifton-Fine was a safe and supportive environment.

23.     Due to cluster headaches causing her to miss work, the end of Dr. Schmidt's residency was delayed. This delayed her start date at Clifton-Fine Hospital. Robert Seamon was regularly updated on Dr. Schmidt's fall 2014 and spring 2015 cluster cycles. When it became

necessary, Robert Seamon changed the contract start date for her appointment with Clifton-Fine Hospital. An addendum was signed by him and Dr. Schmidt to make this change. The amended appointment date for her position at the hospital was June 29, 2015.

24.     When Dr. Schmidt began work at Clifton-Fine Hospital, she found the job to be fabulous. She very much liked the patients and the work she was doing. Robert Seamon told her every day how wonderful she fit, how she was a "calming, balancing presence to the office," and how well she was doing. In addition to the standard work, such as clinic, hospital, and nursing home, Dr. Schmidt did weekend home visits, helped put on two health fairs, and cofacilitated a community wellness initiative. She also attended many community events to raise awareness for their clinic, and to be on hand for medical concerns. For example, she treated a patient with a hypertensive issue at one of these events, and arranged follow up in their clinic.

25.     When Dr. Schmidt started work at the hospital, she was introduced to a part-time physician, Dr. Shambo, who had just begun working at Clifton-Fine Hospital. Mr. Seamon told her that this was a fortuitous surprise hire for the hospital, and that it might help with patient overflow during Dr. Schmidt's cluster headache cycles.

26.     On several occasions, through the beginning of August 2015, Dr. Schmidt told hospital CEO Robert Seamon, and the clinic office manager, Marsha, that she was likely to have an early and difficult autumn cluster cycle, because of her recent move. Dr. Schmidt asked them to work with her on a plan for accommodations. She suggested accommodations such as handling walk-ins only, while she was having cluster headaches. She also suggested that they consider a "second generation open access office model" for her, during that time. This is a medical office model that stresses same day appointments only. These accommodations had worked well for Dr. Schmidt in residency. Dr. Schmidt informed Robert Seamon and Marsha that when these accommodations were initiated for her in residency, it had made her cluster headaches periods

more manageable for the clinic. They seemed to listen, and repeatedly told Dr. Schmidt that they understood and were considering her suggestions. However, her suggestions were never implemented, and she could not get them to engage in further discussions with her about this.

27.     During this time, Dr. Schmidt also reminded Robert and Marsha about making arrangements for her nerve block injections. She contacted both her neurologist (who is certified to train in the sphenocath procedure) and the sphenocath hardware representatives to arrange training and supplies. She got the procedural billing and coding information for the office. She repeatedly requested from the Clifton-Fine representatives that a date be scheduled for training to occur, and was told they were "working on it."

28.     In August 2015, Dr. Schmidt started to have hemicrania continua, which is a persistent moderate headache that often accompanies her cluster headache cycles. She also began to have autonomic symptoms, though sporadically.

29.     In August 2015, Dr. Carthy gave Dr. Schmidt an occipital block (pain injection) for her cluster headache. However, Dr. Carthy did not use all the medications indicated by her neurologist. Afterward, he reported that he was not comfortable giving the blocks, so Dr. Schmidt had to drive to Watertown, New York to a pain specialist. While the pain specialist was able to give occipital injections, he was not able to perform the sphenocath procedure and, as Dr. Schmidt was unable to travel to Michigan to see her neurologist, he gave her an older model of sphenopalentine block. This method of block is thought to be inferior to the newer method, in terms of efficacy for cluster headache. Dr. Schmidt informed her CEO and office manager about this treatment discrepancy.

30.     At the end of August 2015, Dr. Schmidt's cluster headache cycle began. She was unable to work for six weeks because of the cluster headaches.

31.     During Dr. Schmidt's leave, her partner, Wendi Mrozinski, kept the hospital and CEO Robert Seamon informed about Dr. Schmidt's condition and absence. Wendi Mrozinski talked to the administrative office manager at the clinic nearly every day.

32.     During Dr. Schmidt's time away from the clinic, she did not see patients, but she did work on health fairs, which were part of her job duties. It is Dr. Schmidt's opinion that she would have been able to see a limited number of patients, if her suggested accommodations had been implemented.

33.     On September 10, 2015, during a planning meeting for one of the hospital health fairs, Dr. Schmidt spoke with CEO Robert Seamon about her condition. They discussed the stressors at the clinic, her absence due to cluster headaches, and again talked about whether the clinic could do walk-ins only when she was in a cluster cycle. Even though he assured her that they would find a way to "work it out," and that she should "just focus on [her] health," Robert Seamon's demeanor during this meeting left her concerned for her job.

34.     That night Dr. Schmidt's partner, Wendi Mrozinski, called CEO Robert Seamon and asked if the hospital was planning to fire Schmidt. He said, "No, no, no. That's not it at all. Don't worry. Have Heather call me."

35.     On September 12, 2015, there was a health fair at the hospital that Dr. Schmidt was scheduled to attend. She was active in the committee that organized the activities for the health fair. Dr. Schmidt and her partner spent several hours helping with set up, in the days prior to the event. However, due to symptoms from the cluster headache cycle, Dr. Schmidt was only able to work a short time during the actual day of the event.

36.     Dr. Schmidt was able to work another health fair, as well. For this, she designed the patient education posters. During the event, she taught children about the different tools a doctor uses with patients, and let them try a few. For adults, she gave educational talks on atrial

9

fibrillation and on GERD. Additionally, during her cluster cycle, Dr. Schmidt cofacilitated the first community wellness committee meeting, and gave a brief review of the female fertility cycle to the community members present.

37.     Dr. Schmidt returned to full work duties on October 9, 2015. She was still in an active cluster cycle, but her symptoms had somewhat stabilized. Her cluster cycle ended October 31, 2015. After that, Dr. Schmidt did not have another cluster headache until March 3, 2016.

38.     When Dr. Schmidt returned to work on October 9, 2015, she saw patients for over half the day. Then she was called into a meeting with CEO Robert Seamon and the clinic administrative office manager. Robert Seamon told Dr. Schmidt, "We love you, you're perfect, you're exactly what this community and hospital need. You are a great fit. Your patients love you. You are a calming influence on the clinic. We are looking for a way to make this work. We are looking for someone to help." Then later he said, "You are fired; we're searching for your replacement." This conversation was so confusing that Dr. Schmidt had to stop and have him clarify if they were seeking to hire someone to help accommodate her time off, or if her employment was being terminated. He agreed that what he said was confusing, and confirmed that she was being fired.

39.     Dr. Schmidt received a letter terminating her employment that was dated October 9, 2015.

40.     When Dr. Schmidt asked Robert Seamon why her employment agreement was being terminated, he said that the hospital's board of directors made the termination decision. He suggested that if she was open to renegotiation of her contract that she should go to the Board. He offered to go with her, if she wanted.

41.     Dr. Schmidt went with her partner, Wendi Mrozinski, to speak to the head of the board, Walter Todd. The board secretary was also there. Walter Todd said that he and the board

had had no idea that she had a disability, and that if the Board had known of her medical condition they never would have hired her.

42.      Walter Todd told Dr. Schmidt that she should have sent each of the board members individual notice of her disability before accepting the employment offer.

43.      Dr. Schmidt asked Walter Todd if there was anything that could be done for her to keep her job. Dr. Schmidt suggested that she would be open to renegotiation, or even contingent work. He said that there was no way that the situation could be worked out. He said that Dr. Schmidt was a wonderful clinician, that he heard nothing but great things from her patients, and that the community loved her, but that she was too difficult. He also said that he would "hate to see this situation become detrimental" to her future career options and "you wouldn't want that."

44.      There was discussion of Dr. Schmidt working in the four months following her termination date for the hospital, as the contract still had her being paid during that period. The hospital did not want her telling patients that she would not be at Clifton-Fine Hospital any longer, and this posed some ethical conflicts, which she brought up with the CEO and office manager. She was still in a cluster cycle, but was controlled enough to be able to see patients sporadically. Her last day working at the hospital was October 27, 2015. On the 28th, Dr. Schmidt had symptoms that would prevent her from safely seeing patients so she had her partner call to inform the hospital office manager. The office manager responded that she "had to make a call" regarding Dr. Schmidt's continued presence at the clinic, and that she should not return.

45.      Dr. Schmidt is very proud of the work she did at Clifton-Fine Hospital, and she had anticipated a long career with the hospital.

46.      Dr. Schmidt performed her work duties as a family practice physician in a diligent and skillful manner throughout her employment.

47.     Dr. Schmidt was terminated because of her medical condition.  Clifton-Fine Hospital failed to grant her reasonable accommodation of her disability. Clifton-Fine Hospital retaliated against Dr. Schmidt for having disability despite having an understanding of the reasonable accommodations she would require prior to offering her employment.

48.     The discrimination and retaliation Dr. Schmidt experienced has seriously affected her career.

49.     As a result of the above-referenced wrongful conduct, Dr. Schmidt has been deprived of wages and benefits.

50.     The Defendants' actions have also caused Dr. Schmidt to suffer extreme mental anguish, medical problems, and financial loss.

## FIRST CAUSE OF ACTION

### Americans With Disabilities Act – Discrimination

51.     Plaintiff realleges and incorporates paragraphs 1 through 50 as if fully set forth herein.

52.     By their above-stated conduct, Defendants discriminated against Plaintiff in violation of the Americans with Disabilities Act.

## SECOND CAUSE OF ACTION

### Americans with Disabilities Act – Retaliation

53.     Plaintiff realleges and incorporates paragraphs 1 through 52 as if fully set forth herein.

54.     By their above-stated conduct, Defendants retaliated against Plaintiff after she asserted her right to a workplace free of discrimination guaranteed by the Americans with

Disabilities Act.  Defendant discharged Plaintiff in retaliation for complaining about the discrimination she was subjected to.

## THIRD CAUSE OF ACTION

### New York Human Rights Act – Disability Discrimination

55.      Plaintiff realleges and incorporates paragraphs 1 through 54 as if fully set forth herein.

56.      By their above-stated conduct, Defendants discriminated against Plaintiff in violation of the New York Human Rights Act.

57.      By their above-stated conduct, Defendants Robert Seamon and Walter Todd aided and abetted the Plaintiff's discrimination in violation of the New York Human Rights Act.

## FOURTH CAUSE OF ACTION

### New York Human Rights Act – Retaliation

58.      Plaintiff realleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

59.      By their above-stated conduct, Defendants retaliated against Plaintiff after she asserted her right to a workplace free of disability guaranteed by the New York Human Rights Act.

60.      By their above-stated conduct, Defendants Robert Seamon and Walter Todd aided and abetted the Plaintiff's discrimination in violation of the New York Human Rights Act.

## DAMAGES

61.      As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

      a.     Plaintiff seeks compensation for all lost wages and benefits, including pension and medical benefits.

      b.     Plaintiff suffered severe mental anguish and emotional trauma resulting from the incidents of discrimination and retaliation she experienced.

      c.     Plaintiff suffered monetary losses to treat the conditions she developed as a result of Defendant's conduct.

      d.     Plaintiff suffered harm to her career and work prospects.

   Plaintiff demands payment in the amount of $2,000,000.00.

## ATTORNEY'S FEES

62.    Plaintiff is entitled to an award of attorney's fees and costs.

## DEMAND FOR A JURY TRIAL

63.    Plaintiff demands a jury to hear and decide all issues of fact.

*Fiat justitia ruat coelum.*

**DATED:**    **March 21, 2018**

                            THE BARNA LAW FIRM

                            JIM BARNA, ESQ.
                            *Attorney for Plaintiff*

                            NDNY Bar Number: 515417
                            9 Rippleton Road
                            Cazenovia, New York 13035
                            (315) 440 – 6950
                            Jbarna1@twcny.rr.com



**Division of
Human Rights**

**NEW YORK STATE
DIVISION OF HUMAN RIGHTS**

---

**NEW YORK STATE DIVISION
OF HUMAN RIGHTS**
on the Complaint of

**HEATHER M. SCHMIDT, M.D.,**

Complainant,

v.

**ROBERT SEAMON, CHIEF EXECUTIVE
OFFICER, WALTER TODD, CHAIRMAN OF THE
BOARD, CLIFTON-FINE HEALTH CARE
CORPORATION,**

Respondents.

**NOTICE AND
FINAL ORDER**

Case No. 10183894

---

Federal Charge No. 16GB604382

 

 

     **PLEASE TAKE NOTICE** that the attached is a true copy of the Recommended Order

of Dismissal for Administrative Convenience ("Recommended Order"), issued on October 20,

2017, by Edward Luban, an Administrative Law Judge of the New York State Division of

Human Rights ("Division"). An opportunity was given to all parties to object to the

Recommended Order, and all Objections received have been reviewed.

     <u>**PLEASE BE ADVISED THAT, UPON REVIEW, THE RECOMMENDED**</u>

<u>**ORDER IS HEREBY ADOPTED AND ISSUED BY THE HONORABLE HELEN DIANE**</u>

<u>**FOSTER, COMMISSIONER, AS THE FINAL ORDER OF THE NEW YORK STATE**</u>

<u>**DIVISION OF HUMAN RIGHTS ("ORDER")**</u>. In accordance with the Division's Rules of

Practice, a copy of this Order has been filed in the offices maintained by the Division at One

Fordham Plaza, 4th Floor, Bronx, New York 10458.  The Order may be inspected by any

member of the public during the regular office hours of the Division.

**PLEASE TAKE FURTHER NOTICE** that any party to this proceeding may appeal this

Order to the Supreme Court in the County wherein the unlawful discriminatory practice that is

the subject of the Order occurred, or wherein any person required in the Order to cease and desist

from an unlawful discriminatory practice, or to take other affirmative action, resides or transacts

business, by filing with such Supreme Court of the State a Petition and Notice of Petition, within

sixty (60) days after service of this Order.  A copy of the Petition and Notice of Petition must

also be served on all parties, including the General Counsel, New York State Division of Human

Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458.  Please do not file the original

Notice or Petition with the Division.

**ADOPTED, ISSUED, AND ORDERED**.

DATED:  **NOV 0 6 2017**,
Bronx, New York


HELEN DIANE FOSTER
COMMISSIONER



**Division of
Human Rights**

**NEW YORK STATE
DIVISION OF HUMAN RIGHTS**

---

**NEW YORK STATE DIVISION OF
HUMAN RIGHTS**
   on the Complaint of

**HEATHER M. SCHMIDT, M.D.,**

                **Complainant,**

        v.

**ROBERT SEAMON, CHIEF EXECUTIVE
OFFICER, WALTER TODD, CHAIRMAN
OF THE BOARD, CLIFTON-FINE HEALTH
CARE CORPORATION,**

                **Respondents.**

**RECOMMENDED ORDER
OF DISMISSAL FOR
ADMINISTRATIVE
CONVENIENCE**

Case No. **10183894**

Federal Charge No. 16GB604382

## PROCEEDINGS IN THE CASE

On September 16, 2016, Complainant filed a verified complaint with the New York State

Division of Human Rights ("Division"), charging Respondent Clifton-Fine Health Care

Corporation with unlawful discriminatory practices relating to employment in violation of N.Y.

Exec. Law, art. 15 ("Human Rights Law").

On December 6, 2016, the Division amended the complaint to add Robert Seamon and

Walter Todd as Respondents.

After investigation, the Division found that it had jurisdiction over the complaint and that

probable cause existed to believe that Respondents had engaged in unlawful discriminatory

practices. The Division thereupon referred the case to public hearing.

The case was assigned to Edward Luban, an Administrative Law Judge ("ALJ") of the Division. Complainant was represented by Jim Barna, Esq. Respondents were represented by Edward A. Trevvett, Esq.

By letter dated October 19, 2017, Complainant's attorney requested that the Division dismiss the complaint for administrative convenience so Complainant could file her claims in federal court.

By letter dated October 20, 2017, Respondents' attorney notified the presiding ALJ that Respondents do not object to Complainant's request.

Pursuant to Section 297.3(c) of the Human Rights Law, the complaint should be dismissed on the grounds of administrative convenience. Complainant intends to pursue federal remedies in court, in which forum all the issues concerning the question of discrimination charged can be resolved.

ORDERED, that the case be dismissed for administrative convenience.


Dated: October 20, 2017
       Syracuse, New York


Edward Luban
Administrative Law Judge

- 2 -

TO:
Complainant
Heather M. Schmidt, M.D.
2021 Cottage San Road
Silver City, NM 88061

Complainant Attorney
Jim Barna, Esq.
9 Rippleton Road
Cazenovia, NY 13035

Respondent
Robert Seamon, Chief Executive Officer
Clifton-Fine Hospital
1014 Oswegatchie Trail
Star Lake, NY 13690

Respondent
Walter Todd, Chariman of the Board
Clifton-Fine Hospital
1014 Oswegatchie Trail
Star Lake, NY 13690

Respondent
Clifton-Fine Hospital
1014 Oswegatchie Trail
Star Lake, NY 13690

Respondent Attorney
Edward A. Trevvett, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Hon. Eric T. Schneiderman, Attorney General
Attn: Civil Rights Bureau
120 Broadway
New York, New York 10271

<u>State Division of Human Rights</u>
Robert Goldstein, Director of Prosecutions
Lilliana Estrella-Castillo, Chief Administrative Law Judge
Edward Luban, Administrative Law Judge
Michael Swirsky, Litigation and Appeals
Caroline J. Downey, General Counsel
Melissa Franco, Deputy Commissioner for Enforcement
Peter G. Buchenholz, Adjudication Counsel
Matthew Menes, Adjudication Counsel

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### DISMISSAL AND NOTICE OF RIGHTS

To: Heather M. Schmidt, M.D.
2021 Cottage San Road
Silver City, NM 88061

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|--|--|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|--|--|--|
| 16G-2016-04382 | Holly M. Shabazz, State & Local Program Manager | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)   **Charging party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

December 21, 2017
(Date Mailed)

Enclosures(s)

cc:
**Attn: Robert Seamon**
**CLIFTON-FINE HOSPITAL**
**1014 Oswegatchie Trail**
**Star Lake, NY 13690**

**Jim Barna, Esq.**
**9 Rippelton Road**
**Cazenovia, NY 13035**

**Edward A. Trevvett, Esq.**